**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

In re:                                                              CHAPTER 11

Sky-Skan Incorporated,                                 Case Number 17-11540-BAH

 Debtor

## DEBTOR'S PLAN OF REORGANIZATION
## AMENDED AS OF APRIL 19, 2019

Debtor and Debtor-in-Possession Sky-Skan Incorporated (the "Debtor") hereby proposes this plan of reorganization (the "Plan") to all known holders of claims and interests as authorized by Section 1121(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Code") and moves the United States Bankruptcy Court for the District of New Hampshire (the "Bankruptcy Court") to enter an order confirming the Plan pursuant to Section 1129 of the Code, including § 1129(b).

## INTRODUCTION

The Debtor hereby proposes this Plan pursuant to Section 1121(a) of the Bankruptcy Code. The Disclosure Statement that accompanies this Plan discusses the Debtor's history, businesses, assets, and results of operations, and contains a summary and discussion of this Plan. Holders of Claims and Interests and parties to executory contracts and unexpired leases are encouraged to read the Disclosure Statement. No solicitation materials other than the Disclosure Statement and related materials transmitted therewith have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan. To the extent there may be any inconsistency between the Plan and the Disclosure Statement, the Plan shall control.

## I.     Definitions, Rules of Construction and Primacy.

### A.     Definitions.

1.     All capitalized words, terms and phrases appearing in this Plan shall have and be given the meaning attributed to them in the Disclosure Statement of even date. To the

extent of any conflict between this Plan and the Disclosure Statement, definitions provided in this Plan shall govern.

2.      Words, terms, and phrases defined in Bankruptcy Code and Bankruptcy Rules shall have and be given the meanings attributed to them in Bankruptcy Code.

3.      To the extent that any word, term, or phrase is not defined herein or the Bankruptcy Code or Rules but constitutes a term of art used in Chapter 11 bankruptcy cases, each such word, term or phrase shall be its customary and usual meaning when used in that context.

**B.      Primacy.**  If there shall be any conflict or apparent conflict between or among:

1.      This Plan and the Disclosure Statement, any such conflict shall be resolved in favor of the Plan, which establishes and governs the respective duties, liabilities, obligations, privileges, remedies and rights of the Debtor and Plan Parties following confirmation; or

2.      This Plan and the Confirmation Order, any such conflict shall be resolved in favor of the Confirmation Order, which shall automatically modify and supersede this Plan.

**II.    Conditions Precedent, Confirmation and Effective Dates.**

**A.      Conditions Precedent.**  The obligation of the Debtor to implement this Plan is conditioned on the entry of a Confirmation Order that is reasonably satisfactory in form and substance to the Debtor.

**B.      Waiver.**  The Debtor or any other Plan Party benefited by a condition precedent may but need not waive any condition precedent at any time by filing a written notice thereof with the Court.

**C.      Confirmation and Effective Dates.**

1.      The Confirmation Date means the date on which the order confirming this Plan shall become final and non-appealable.

2.      The Effective Date means that date which is 30 days after the entry of the Confirmation Order on the Court's computerized docket by the Clerk of the Court, or the first business day thereafter.

     **D.**     **Effect of Confirmation.**

          1.     On the Effective Date, this Plan shall become a valid and binding contract and shall be enforceable by and against the Debtor, including the Debtor, and all Plan Parties in accordance with applicable state and federal law.

          2.     Following the Effective Date, this Plan, as amended, modified, or supplemented by the Confirmation Order or any other order entered by the Court, shall define, establish, and govern the Plan obligations and rights of the Plan Parties, including those arising from, out of or incidental to any document executed pursuant to or in furtherance of this Plan.

**III.**     **Plan Classes, Impairment, Voting Rights, and Acceptance.**

     **A.**     **Plan Classes.**  The Confirmation of this Plan will divide the Debtor's creditors and equity security holders into the following Classes, which may be referred to herein by Class title or Class number:

          1.     IRS Secured Claims Class.

          2.     Contingent Coastal Capital, LLC Secured Claims Class.

          3.     Administrative Expense Claims Class.

          4.     Priority Tax Claims Class.

          5.     Convenience Claims Class.

          6.     General Unsecured Claims Class.

          7.     Subordinated General Unsecured Claims Class.

          8.     Equity Interest Holders Claims Class.

          9.     Department of Labor Claims Class.

     **B.**     **Unimpaired Classes.**  There are no unimpaired classes.

     **C.**     **Impaired Classes.**  All classes are impaired pursuant to Section 1124 of the Code.

     **D.**     **Cramdown.**  If this Plan is not accepted by all impaired classes, the Debtor hereby moves the Court to confirm this Plan pursuant to Section 1129(b) of the Code.

**IV.**     **Treatment of Claims.**

A.      **Class 1:  IRS Secured Claims Class.**

1.      This Class includes all claims held or asserted against the Debtor by the IRS to the extent allowed as Secured Claims, including without limitation, the claims asserted in Claim #2 filed on January 3, 2018 in the amount of $763,122 ($761,948 as secured, $1,173.98 as priority).  If any claims asserted by the IRS shall not qualify as Secured Claims for any reason, such claims shall be treated as Priority Tax Claims and General Unsecured Claims, as appropriate.

2.      On the Effective Date, the IRS shall be allowed a single Secured Claim against the Debtor in an amount equal to the Reorganization Value of the Debtor's inventory, accounts and the proceeds thereof that arose or came into existence on and after the 46th day following the date on which the IRS filed its first Notice of Federal Tax Lien – February April 9, 2016 (the "IRS First Priority Collateral") as agreed to by the Debtor and the IRS or in the amount determined by the Court (the "IRS Allowed Secured Claim") in the Coastal Adversary. This amount is expected to be $763,122.

3.      All Allowed Claims in this Class shall be paid by the Debtor in accordance with the provisions of this Plan and the Trust.

4.      Debtor will pay the Allowed Secured Claim of the IRS, via the Trust, with interest at the statutory rate (presently 4%), in installments that will conclude no later than five years from November 1, 2018 in accordance with Exhibit E.

5.      The liens held by the IRS shall be retained by the IRS and preserved for its benefit as security for the payment of the IRS Allowed Secured Claim in accordance with the provisions of this Plan. The IRS shall discharge, or be deemed to have discharged, all liens against the Debtor or Reorganized Debtor upon completion of the Plan payments above.

6.      Notwithstanding the Confirmation of this Plan, the IRS shall retain all its privileges, remedies, and rights against other persons responsible for the payment of the tax liabilities included in the IRS Allowed Secured Claim.

B.      **Class 2:  Contingent Coastal Capital, LLC Secured Claims Class.**

1.      This contingent Class includes all the disputed, contingent and unliquidated claims held or asserted against the Debtor by Coastal to the extent Allowed as

Secured Claims, including without limitation, Proof of Claim #21 in the amount of $932,152.33 filed by Coastal, less the sum of the following amounts:  (a) the amounts recovered by or awarded to Debtor in the Coastal Adversary, (b) any other awards, offsets, recoupments and credits due the Debtor (collectively the "Coastal Allowed Secured Claim"). This Class shall cease to exist if the Court determines or the Debtor and Coastal agree that none of the claims asserted by Coastal should be allowed as Secured Claims.  If and to the extent that any claim asserted by Coastal shall not be allowed as a Secured Claim because the value of Coastal's interest in the Debtor's interest in the collateral claimed by Coastal is less than the amount of its claims, such claim shall become and be treated as disputed, contingent and unliquidated General Unsecured Claims or Subordinate Claims, as appropriate, and paid and otherwise treated as provided for in this Plan if and only to the extent allowed by the Court. .

2.      Any Coastal Allowed Secured Claim shall be paid in full, with interest at the Prime Rate (4.5%), plus 1% over six (6) years in consecutive monthly installments. The Debtor will begin making such payments on the 30th day from the date this claim is allowed. The Debtor believes these assets, which are the only security for Coastal's claims and thus limit the claim, are worth $110,000 (see Exhibit B) at most. For feasibility purposes only, however, the Debtor will present its Financial Projections, attached as Exhibit E, showing that it could service an Allowed Coastal Secured Claim of up to $600,000.

3.      All Allowed Claims in this Class shall be paid by the Debtor in accordance with the provisions of this Plan and the Trust.

4.      Subject to the modifications made pursuant to this Plan, the Coastal Liens shall be retained by Coastal and preserved for its benefit at the same level of priority as they existed as of the Petition Date, but only as security for the payment of the Coastal Allowed Secured Claim (if any) in accordance with the provisions of this Plan.

5.      The entry of the Confirmation Order shall automatically modify the loan and security documents between the Debtor and Coastal (the "Coastal Loan Documents") necessary to conform to the provisions of this Article.

6.      Except as expressly modified by this Plan, Coastal shall retain all its privileges, remedies and rights against the Debtor arising from, out of or incidental to the Coastal Allowed Secured Claim following the Confirmation of this Plan.

7.     If Coastal shall not be allowed a Secured Claim by a final order of this Court, Coastal shall execute and deliver to the Debtor a termination statement or discharge and release of each lien of record held by Coastal in such form as may be reasonably required by the Debtor and return all of the Coastal Loan Documents to Debtor marked void or canceled, except for the promissory notes evidencing the Non-Priority Unsecured Claims allowed Coastal.

C.     **Class 3:  Administrative Expense Claims Class.**

1.     This Class includes all claims held or asserted by professionals retained pursuant to Code Section 327 for professional fees, costs and expenses to the extent, including without limitation, the Debtor's counsel, the counsel for the Official Committee of Unsecured Creditors ("Committee Counsel"), Attorney Cheryl Deshaies and each other "Professional Administrative Creditor" that has agreed to join this Class, if any, to the extent allowed and entitled to priority under Section 507(a)(2) in each case. The Debtor anticipates these claims will be approximately $226,000.

2.     No dividends shall be paid to any creditor in this Class until the Court enters an order granting a fee application filed by the professional in whole or in part.

3.     All Allowed Claims in this Class shall be paid by Debtor through the Trustee in accordance with the provisions of this Plan and the Trust and shall be senior to all other Allowed Priority Unsecured Claims and Non-Priority Unsecured Claims.

4.     Unless paid sooner by Trustee (the Trustee has absolute discretion in accelerating payments in this Class), all Allowed Claims in this Class shall be paid in full, with interest at the rate of 4% per annum, in forty-eight (48), consecutive, equal, monthly installments of principal and interest, beginning on the 30th day following Confirmation subject to reduction for the application of the following payments.

a.     The proceeds of the Coastal Adversary and any other Chapter 5 actions shall be paid to the Trustee for distribution to Allowed Creditors on a *pro rata* or fractional basis, the numerator of which shall be the unpaid, Allowed Amounts of the Administrative Claims held by a professional and the denominator of which shall be the sum of the unpaid Allowed Amounts of Allowed Administrative Claims in this Class.

5.     Any payments made pursuant to the preceding subparagraph shall be applied in reduction of accrued but unpaid interest and then the principal balances of the Allowed Claims in this Class.   The remaining balance, including accrued but unpaid interest, if any, shall be re-amortized over the remainder of the amortization period set by paragraph 6 of this Section.  Except for the reduction of the periodic payment due under paragraph 6, the Debtor shall remain obligated to make the periodic payments required by such remainder of that paragraph in accordance with the terms thereof.

6.     In the event that the Debtor should not provide the Trustee with sufficient funds to make any payment due on an Allowed Claim in this Class in full, the Trustee shall distribute the money available to Allowed Creditors in this Class on the *pro rata* or fractional basis established by subparagraph 4.a. of this Section.

7.     Following a default in paying any dividend due Allowed Creditors in this Class, no dividends shall be paid to any other Allowed Creditor in any junior Class until Allowed Creditors in this Class have been paid in full.

8.     On or before the Effective Date, the Debtor shall make and deliver to Trustee, as agent for the Allowed Professional Creditors, a promissory note for the payment of a sum equal to the total amount of Allowed Professional Claims from time to time, with interest at the rate of 4% per annum, (the "Professional Note") to the order of such Agent in forty-eight (48) consecutive, equal, monthly installments of principal and interest.  The Allowed Professional Creditors shall be tenants-in-common with respect to the Professional Note and the other Professional Security Documents.  Each Allowed Professional Creditor shall own a fractional part of each Professional Security Document, the numerator of which shall be the amount of the Allowed Professional Claim held by a Professional and the denominator of which shall be the total amount of Allowed Professional Claims.  All decisions pertaining to the administration, collection and enforcement of the Professional Security Documents shall be made by a majority in interest of the Allowed Professional Creditors.

9.     As security for the payment of the Professional Note, the Debtor shall execute and deliver to the Trustee on or before the Effective Date:

a.     A security agreement which satisfies the requirements of this subparagraph and is otherwise reasonably acceptable in form and substance in all other respects

to the Trustee and the Allowed Professional Creditors.  The security agreement shall grant the Trustee present and continuing security interests in, to and on all of the Debtor's assets of any and every nature whatsoever whether existing on the date thereof or acquired or arising thereafter, including without limitation, accounts, equipment, fixtures, general intangibles, investment property, inventory and other assets of every nature and description, additions, accessions, replacements and substitutions to or for any thereof, the products and proceeds thereof and after-acquired assets or property of the same kinds, types and descriptions subject only to the following Liens held by the IRS and Coastal to the extent specifically preserved by this Plan if at all:  (1) IRS on the Debtor's accounts, inventory, the products and proceeds thereof and after-acquired property of the same kinds, types and description and (2) Coastal Capital on the Debtor's equipment and general intangibles, the Liquidation proceeds thereof (if any) and after-acquired property of the same kinds, types and description.

        b.     A collateral assignment of leases and leasehold interests of the premises leased by the Debtor which satisfies the requirements of this subparagraph and is otherwise reasonably acceptable in form and substance in all other respects to the Trustee and the Allowed Professional Creditors.

        10.     A security agreement satisfactory in form and substance to the Allowed Creditors in this Class that grants them or their principals present and continuing security interests in and to the equity interests in the Debtor owned by the Savages and such other documents as may be reasonably required by the Trustee to effectuate this paragraph and the purposes hereof.

        11.     On the Effective Date, the Debtor shall pay in full all quarterly fees then due the United States Trustee.  The Debtor shall be responsible for the timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the entry of a final decree in this case. After Confirmation, the Debtor shall file a quarterly financial report for each quarter (or portion thereof) until the Court shall enter a final decree.

        12.     Except for the quarterly fee due the United States Trustee, all the other claims in this Class shall be allowed in such amount as set forth by order of this Court upon approval of an application for allowance of an Administrative Claim and paid in full on the later of the Effective Date or the date upon which the Debtor and such holder of an Allowed Administrative Claim agree.

13.     All requests for professional fees and the reimbursement of expenses shall be upon application to the Court and must be filed within sixty (60) days of the Effective Date. If a creditor fails to seek Court approval of a non-professional fee administrative expense claim within sixty (60) days of the Effective Date, such claim shall be barred pursuant to the terms of the Plan.

### D.     Class 4: Priority Tax Claims Class.

1.     This Class consists of all claims held or asserted against the Debtor by creditors entitled to priority under Code Section 507(a)(8) to the extent of such priority ("Priority Tax Creditors"). These claims are unsecured.

2.     All Allowed Claims in this Class shall be junior to Allowed Classes 1, 2 (to the extent they are Allowed as secured claims) and 3 and senior to all Claims in Classes 5, 6, 7, 8 and 9.  In the event that the Debtor shall not provide the Trustee with sufficient money to make the payments due Allowed Creditors in this Class in full, the money available to pay dividends to Allowed Creditors in this Class shall be distributed on a *pro rata* or fractional basis, the numerator of which shall be the unpaid balance of an Allowed Claim in this Class and the denominator of which shall be the sum of the unpaid balances of Allowed Claims in this Class.

3.     All Allowed Claims in this Class shall be paid by the Debtor through the Trust in accordance with the terms of this Plan and the Trust.

4.     The Allowed Claim in this Class will be paid in full, with interest at statutory rate (presently 6%) per annum, in forty-eight (48) consecutive monthly installments beginning on the 30th day from the Effective Date.

5.     Based on proofs of claims filed to date, the Debtor estimates these claims total $104,861 and consist of the claims of the California Dept. of Tax and Fee Administration ($5,549.99); California Franchise Tax Board ($829.28); State of New Hampshire Dept. of Revenue Administration ($62,715); City of Baton Rouge ($19,653); and the Louisiana Dept. of Revenue ($16,114.13).

### E.     Class 5: Convenience Claims Class.

1.     This Class consists of all General Unsecured Claims which are less than $2,000 in amount. The Debtor estimates these will total approximately $23,613.62 upon Confirmation. The Reorganized Debtor shall pay Allowed Claims in this Class in full on the

30th day from the Effective Date.   As shown in Exhibit A, this Class includes several current or former employees of the Debtor who are holders of claims identified in Class 9, DOL Claims, but which will be treated as Convenience Claims Class holders for simplicity.

 **F.**   **Class 6: General Unsecured Claims Class.**

  1.   Except for Convenience Creditors and any creditors placed in the Subordinate Claims Class by an Order or Judgment entered by the Court, this Class includes all creditors that hold or assert Non-Priority Unsecured Claims against the Debtor, which are defined as the General Unsecured Creditors and General Unsecured Claims, including without limitation, the creditors and claims listed in Exhibit A, Creditors and Claims.

  2.   The Debtor shall form and fund the Trust in accordance with the provisions of the part hereof captioned "Formation and Funding of Trust for the Benefit of Certain Creditors." All Allowed Claims in this Class shall be paid by the Debtor in accordance with the provisions of this Plan and the Trust.

  3.   All Allowed Claims in this Class shall be paid by the Trustee in accordance with the provisions of this Plan and the Trust.

  4.   The Allowed Claims in this Class shall be senior to claims in the Subordinated Claims Class and junior to all other Classes of Claims.

  5.   The Debtor will pay to the Trust for distribution to the General Unsecured Creditors amounts sufficient for the Trust to make *pro rata* payments in consecutive monthly installments to the holders of Allowed Claims in this Class beginning eleven (11) months from the Effective Date in the total amount of $25,000. In the second year of the plan, the Debtor will pay to the Trustee for distribution to the General Unsecured Creditors the monthly amount of $6,250. This amount will increase in year three to $6,875 per month, in year four to $8,250, in year five to $33,000, and in year six to $39,600 until the Allowed Claims in this Class have been paid in full.

  6.   Holders of Allowed Claims in this Class shall also be entitled to a single payment of 20% of the net proceeds of any sale by the Debtor of substantially all its assets or the gross sale of equity interests in the Debtor, if such transaction occurs prior to the last payment

under the Plan (the "Sale Payment"), up to that amount which would result in payment in full to creditors in this Class.

**G.    Class 7:  Subordinated General Unsecured Claims Class.**

1.    This Class consists of and includes the claims held or asserted by Coastal and Steven and Virginia Savage if, and to the extent that, the Bankruptcy Court determines all or some of the Coastal claims should be subordinated to the claims of other Unsecured, Non-Priority Creditors. This Class holds the insider claims of the Savages in the amount of $1,088,592.

2.    No dividends shall be paid on account of any Allowed Claim in this Class unless and until all dividends and other sums due Allowed Creditors in each other Class have been paid in full.

3.    All Allowed Claims in this Class shall be paid by the Debtor in accordance with the provisions of this Plan and the Trust.

4.    The Savages have agreed to subordinate their claims. To the extent the Bankruptcy Court determines that all, or any portion of the Coastal Claims should be subordinated to those of other Unsecured, Non-Priority Creditors, (a) the subordinated claims shall be removed automatically from the General Unsecured Class and placed in this Class and (b) the dividend rights of any creditor holding an Allowed Claim in this Class shall be junior, inferior and subordinate to those of creditors holding Allowed Claims in 1, 2, 3, 4, 5, 6 and 9 to the extent of any dividends payable by the Debtor or the Trustee and such other Classes as the Bankruptcy Court may designate in the Order.

5.    This Class is subject to all the provisions set forth in the part of this Plan captioned "Provisions Generally Applicable to All Classes of Claims."

**H.    Class 8:  Equity Interest Holders Claims Class.**

1.    This Class includes Steven Savage and all persons claiming by, through or under him.

2.    **Subordination of Claims.**  Steven Savage is the owner of 100% equity interest in the Debtor.  In exchange for the following, Mr. Savage will retain such ownership:

    a.  Steven and Virginia Savage have agreed to subordinate any and all of their claims against the Debtor;

    b.  Steven and Virginia Savage will agree to enter into non-competition agreements with the Reorganized Debtor on the Effective Date in form and substance reasonably satisfactory to the Committee and Trustee; and

    c.  Steven Savage will contribute the amounts to which he would otherwise be entitled in the event of a Sale Payment described above becomes due the Trustee or Allowed General Unsecured Creditors.

  **I.**  **Class 9: Department of Labor Claims Class.**

    1.  This Claim consists of proof of claims filed by the U.S. Department of Labor in the amount of $152,416.55 (the "DOL Claim"). These funds are alleged to be owed by the Debtor to certain current and former employees arising from the Debtor's failure to remit employee and employer contributions owed to the Debtor's 401(k) plan.

    2.  The Debtor does not dispute the amount or validity of this claim. This obligation is joint and several between the Debtor and its principals, Steven and Virginia Savage, who are also Chapter 11 Debtors in a case now pending before this same Court, Docket No., 17-11760.

    3.  All Allowed Claims in this Class shall be paid by the Debtor in accordance with the provisions of this Plan and the Trust.

    4.  The Trustee will pay the full amount of the Allowed DOL Claim as shown in Exhibit A. $143,383 of the DOL Claim will be paid through this class, the balance will be paid through the Convenience Class, Class 5. The Trustee will make distributions on a *pro rata* basis to the Debtor's 401(k) plan custodian. The Debtor also recognizes the DOL's right to bring an action under the Employee Retirement Income Security Act of 1974, 29 USC §1001 *et seq.* against the Debtor and the Savages and the Debtor's Plan does not discharge or waive any such action if the Debtor does not pay the DOL Claims for any reason. Any such action, however, is stayed by the Debtor's Plan.

**VI.**  **Post-Confirmation Debtor, Ownership and Management.**

  **A.**  **Reorganized Debtor, Ownership and Management.**  The Reorganized Debtor

will continue to be a New York corporation.  The Reorganized Debtor will be managed by a Board of Directors ("Board") and officers elected by the Board. The Board may include Steven Savage, Glenn Smith, the Trustee, a member appointed by the Committee, and a representative of Next Level Now, Inc. or its successor, and the Debtor's Interim CEO. The Debtor shall be managed by the following persons known as the Initial Officers unless and until their successors shall have been elected, qualified and assumed office: Brandi Bonds, Chief Operating and Financial Officer, the Debtor's Interim Chief Executive Officer, Virginia Savage, Treasurer, Steven Savage, Head of Sales.  At all times, the Debtor shall have qualified management appointed and/or employed by the Board.

     **B.**     **Financial Covenants.**  Until the Reorganized Debtor has paid all the dividends due creditors under this Plan:

     1.     The Reorganized Debtor shall manage and conduct its business and affairs prudently and in accordance with the terms of the Confirmation Order, this Plan and applicable federal and state law.

     2.     The Reorganized Debtor shall keep true, complete, and accurate records and books of account on a consistent basis, which fairly depict the results of the Reorganized Debtor's business.  The Trustee may examine such books of account at any mutually convenient time during the normal business week.

     3.     The Reorganized Debtor shall not pay to the Savages or any other person any salary, benefits, or other compensation of any nature whatsoever more than: (a) the amount provided for herein in the case of the Savages; provided, however, that the directors may elect to pay less; and (b) the reasonable value of services performed by other officers and employees.

     4.     The Reorganized Debtor shall not pay more than the reasonable value of services rendered to, work done for or goods sold to the Reorganized Debtor by persons and entities (other than the Savages) and others covered by the preceding paragraph (3) in the ordinary course of the Reorganized Debtor's business.

     **C.**     **No Other Limitations.**  Except as specifically limited by this Plan, the Reorganized Debtor shall have full and complete authority to manage the Reorganized Debtor's business and affairs following Confirmation.

**D.**     Steven Savage will own 100% of the equity in the Reorganized Debtor subject to the security interests to be granted to the Creditors Trustee. Such security interest will provide, *inter alia*, that it may not be exercised upon the event of a default under the Plan, unless such default is not cured within ninety (90) days of the Trustee providing written notice of such default to Mr. Savage. The security interest may also not be exercised if any such defaults under the Plan is caused by the willful or intentional act or acts of the Trustee. As further security for payments under the Plan, Mr. Savage will grant the Trustee a revocable voting trust proxy (the "Proxy") in a form satisfactory to Mr. Savage and the Trustee. The Proxy shall grant the Trustee the exclusive right to vote the shares of Mr. Savage in the Debtor until all payments are made under the Plan, at which time the Proxy will terminate automatically.

**VII.     Certain Implementing Acts, Actions and Transactions.**

**A.     Abandoned and Retained Property.**  The Debtor will not abandon any property as part of the Plan, but will retain all of its assets for the benefit of the Reorganized Debtor.

**B.     New Lease of Savage Premises and Option to Purchase**. On or as of the Effective Date, the Reorganized Debtor and Steven Savage shall enter into a triple net lease of the portion of the Reorganized Debtor's business premises owned by Mr. Savage.  The lease shall include an option to purchase the leased premises for the fair market value thereof.  If, and to the extent that Coastal should have an Allowed Claim against the Savages or either of them that is secured by a valid and enforceable, perfected mortgage of the leased premises, the Reorganized Debtor may assume the indebtedness secured thereby, as modified by any plan of reorganization confirmed by the Court in the Savage Bankruptcy Case, on a nonrecourse basis.

**C.     Plan Payment Note and Security Agreement.**

1.     On or as of the Effective Date, the Reorganized Debtor shall execute and deliver a promissory note (the "Plan Payment Note") with a six (6) year term requiring the Debtor to pay over to the Trust the payments described in Class 6, above.

2.     As security for the payment of the Plan Payment Note, the Reorganized Debtor shall execute and deliver to the Trustee a security agreement granting the Trustee present and continuing security interests in and to all the assets of the Reorganized Debtor subject to the IRS Liens and any other liens expressly preserved by this Plan, if any ("Plan Payment Security Agreement").

3.      The Plan Payment Note, Plan Payment Security Agreement and financing statements shall be executed by each necessary party, conform to the terms of this Plan and otherwise be acceptable in form and substance to the Trustee in their sole discretion.

**D.      Completion of Coastal Adversary**.

1.      The Debtor shall assign all of its rights and interest in the Costal Adversary to the Trust and the Trust shall have full and unfettered authority to prosecute and resolve the Coastal Adversary in its sole discretion, subject to consultation with the Debtor and Court approval.  All of the fees and costs, including attorneys' fees, associated with the prosecution of the Coastal Adversary will be paid for from the proceeds of any recovery made in or through the Adversary or any settlement thereof.  The balance (if any) shall be distributed by the Creditors Trustee to Trust Beneficiaries and credited against the payments becoming due under the Plan Note in the inverse order of their maturities.

**E.      Formation and Funding of Trust for the Benefit of Certain Creditors.**

1.      On or as of the Effective Date, the Reorganized Debtor, acting as the Donor, and Jeffrey T. Varsalone, or some other party designated by the Committee, acting as the initial Trustee, shall form the Sky-Skan Trust by executing a Trust Agreement for the benefit of Priority and Non-Priority Unsecured Creditors holding Allowed Claims, whom and which are known as the Beneficiaries of the Trust.

2.      The Trust shall be incorporated herein by reference as fully as if set forth at length.  In the event of any conflict, apparent conflict or inconsistency between the provisions of the Confirmation Order, the Trust and the Plan, as approved by the Court, the conflict or inconsistency shall be resolved as follows: first, in favor of the Confirmation Order and second, in favor of the Trust itself over the Plan. Except as otherwise defined herein, all capitalized words, terms and phrases defined in the Trust shall have and be given the same meaning when used herein.

3.      From and after the date of the Confirmation Order, the Trust shall be governed, managed and operated by the Trustee pursuant to the Trust Agreement.  The Trustee shall be authorized and directed to implement the Plan with full power and lawful authority to exercise and perform all the rights, powers and duties held by the Reorganized Debtor and the Estate, including without limitation, those created by, or arising or existing under this Plan,

Bankruptcy Code Sections 1106, 1107 and 1108 and Chapter 5 of the Bankruptcy Code.

4.      On or as of the Effective Date, the Reorganized Debtor shall grant, issue, assign, transfer and deliver to the Trustee pursuant to the Trust Agreement the following property, instruments and securities (the "Trust Assets"), free and clear of all liens, claims and interests of any and every nature whatsoever, except as otherwise provided for in this Plan, by executing and delivering instruments of conveyance acceptable to the Trustee in their sole and absolute discretion:

a.      The Coastal Adversary, as now filed and as amended from time to time hereafter, and/or the proceeds thereof;

b.      All the actions to be retained by the Debtor for the benefit of the Estate pursuant to the Plan, including without limitation, the Chapter 5 Actions, the Coastal Adversary, and the right and standing to prosecute to judgment or settle such retained actions in the name of the Debtor for the benefit of the Trust and the Beneficiaries (the "Retained Actions"); and

c.      The Plan Payment Note for the payment of the Allowed Claims held by General Unsecured Creditors and the Plan Payment Security Agreement.

5.      The Trustee shall hold legal title to the Trust Assets from time to time for the benefit of the Beneficiaries of the Trust and pay the dividends and make the distributions of property provided for in the Trust and this Plan in accordance with the beneficial interests of the Beneficiaries.

6.      The Trustee and Beneficiaries shall have the powers, authorities and privileges conferred on them by the Trust and the duties and obligations imposed on them by the Trust, including without limitation, the rights to compensation, expense reimbursement, exculpation and indemnification granted them by the Trust and all the other immunities, privileges, remedies and rights granted them by the Trust.

7.      Neither the Reorganized Debtor nor any equity holder or recast equity holder shall have any claim to or any rights, title or interests in or to the Trust Assets, whether direct, residual, contingent or otherwise, once such assets have been transferred to the Trust.

8.      The Trustee's costs and fees will be funded entirely from amounts allocated to pay Class 6 General Unsecured Claims, holders of which will have agreed to pay for the services of the Trustee from their dividends.

**VIII.   Executory Contracts and Unexpired Real Estate Leases.**

1.      The Plan Article captioned "Executory Contracts and Unexpired Real Estate Leases" governs the assumption, assumption and assignment and rejection of executory contracts and unexpired, non-residential real estate leases.  Under the Plan, the entry of the Confirmation Order will automatically approve and authorize the Debtor to implement its decisions regarding the assumption, assumption and assignment and/or rejection of executory contracts and unexpired real estate leases as permitted by the Plan.

2.      At this time, the Debtor plans to, and will assume the following executory contracts:

a.      Lease with Cannon Financial for photocopier at the rate of $447.52 per month;

b.      Lease with Diagnostic Medical Associates for one of the four commercial condominiums rented to the Debtor at the rate of $3,419 per month;

c.      Lease with Steven Savage for three of the four commercial condominiums rented to the Debtor at the rate of $3,500 per month;

d.      Lease with Neopost USA, Inc. for a postal machine at the rate of $326.20 per annum; and

e.      The Periodic Maintenance Agreements identified in Exhibit D, which generate total revenue for the Debtor in the approximate amount of $256,738.

3.      The Debtor is not rejecting any executory contracts.

**IX.     Termination, Settlement and Retention of Actions.**

**A.      Termination of Certain Proceedings.**  The following proceedings initiated against the Reorganized Debtor before the Petition Date (the "Terminated Proceedings")  shall be terminated on or as of the Effective Date by the filing of a pleading by the Reorganized Debtor that reads "Dismissed with prejudice as against the Reorganized Debtor pursuant to the

terms of the Order Confirming Plan entered by the United States Bankruptcy Court for the District of New Hampshire, Doc. _____ and the plan confirmed thereby without prejudice to the plaintiff(s) rights under such plan, if any:"

        1.    <u>Coastal Capital LLC v. Sky-Skan, Inc. et al.</u>, Hillsborough County Superior Court, Case No. 226-2017-CV-00411; and

        2.    <u>De Lage Landen Financial Services, Inc. v. Sky-Skan, Inc. et al.</u>, Hillsborough County Superior Court, Case No. 226-2017-CV-00212;

**B.**    **Retained Actions.**  Except for Terminated Proceedings and Causes Actions and Proceedings that (1) have been settled by the Reorganized Debtor with Court approval during this Case and (2) those terminated or settled by the Confirmation of this Plan, the Reorganized Debtor shall retain and assign to the Trustee for initiation and prosecution to judgment and/or settlement pursuant to Bankruptcy Rule 9019 all other Retained Actions as provided for by this Plan following Confirmation subject to the further provisions of this Article:

        1.    The Coastal Adversary as amended from time to time hereafter and any other Causes of Action that the Reorganized Debtor has or may have against Coastal based on its pre-petition or post-petition acts, omissions or conduct and all other objections to the claim or claims asserted by Coastal.

        2.    Any contested matter or adversary proceeding pending on the date of the Application for Final Decree filed in this Case.

        3.    All Chapter 5 Actions and fraudulent transfer actions.

        4.    Objections to claims filed pursuant to, and as permitted by this Plan and the Confirmation Order.

        5.    Applications for the payment of fees and the reimbursement of costs and expenses, the retention of special counsel or other Professionals, the entry of a Final Decree or any other administrative matter.

**C.**    **Counsel, Settlement Approval and Proceeds.**

        1.    Following the assignment of the Retained Actions, the Trustee shall have the sole and exclusive right to initiate and prosecute to judgment and/or settle the Retained

Actions as the Trustee in the exercise of their business judgment determine to be in the best interests of the Beneficiaries subject to Court Approval pursuant to Bankruptcy Rule 9019.

2.     At the option of the Trustee, the Debtor's Counsel and/or the Committee's Counsel may continue to represent the Trustee or the Trust in any Retained Action or Cause of Action on the terms previously approved by the Court or on a contingent fee basis approved by the Trustee.  Subject to Court approval, the Trustee may retain other counsel to represent the Reorganized Debtor in connection with a Retained Action or Cause of Action on such terms and conditions as the Court may approve.

3.     No Retained Action or Cause of Action shall be settled without the prior approval of the Court pursuant to Bankruptcy Rule 9019.

4.     Any recovery (except for any portion thereof that specifically requires the payment of attorneys' fees, costs and expenses) made against a creditor entitled to a dividend hereunder because of a Retained Action shall first be offset against such dividend.

5.     Subject to the provisions of the preceding paragraph, the remaining proceeds of any recovery made on account of a Retained Action, the amount thereof shall be distributed or retained as follows:  (a) first, in payment of the attorneys' fees, costs and other expenses incurred in connection with the recovery to the extent approved by the Court and (b) then, the balance shall be disbursed by the Trustee in accordance with the terms of the Trust.

## X.     Resolution of Claims and Payment of Dividends.

**A.     Dividends Paid Only to Creditors Holding Allowed Claims.**  Notwithstanding any other provision hereof, dividends shall be paid only to creditors holding Allowed Claims.

**B.     Claim Objections.**  Except for, and to the extent that a claim shall be expressly Allowed by the entry of the Confirmation Order, the Debtor, in the exercise of its business judgment, may object to (1) any of the claims listed in Exhibit A or the Schedules filed in support of the Petition as disputed, contingent or unliquidated, (2) any claim based on (a) the failure of the creditor to file timely a necessary Proof of Claim, (b) an offset, recoupment, counterclaim or other defense of which the Reorganized Debtor did not have actual knowledge on the Disclosure Date, (c) an accounting dispute arising from a difference between the amount claimed by a creditor in a timely filed Proof of Claim and the amount of a claim listed by the Reorganized Debtor in Exhibit A as being undisputed or the amount shown as being due on the

Reorganized Debtor's financial records, or (d) a factual or legal basis for an objection of which the Reorganized Debtor did not have actual knowledge on the date of the Disclosure Statement approved by the Court.

> **C.**    **Resolution of Disputed Claims.**

> 1.    Except as permitted herein or an order entered by the Court, the Debtor shall have the sole and exclusive right to object to claims asserted by creditors other than professionals.  All legal fees and expenses of the Reorganized Debtor incurred in the prosecution of objections to claims shall constitute Administrative Claims and be paid in accordance with this Plan to the extent approved by the Court.

> 2.    The Reorganized Debtor shall file claim objections pursuant to Bankruptcy Rule 3007 on or before the date set by the Confirmation Order or such later date as may be set by the Court with respect to a claim or claims.  The failure to file a claim objection by the date set by the Court shall be deemed to be a waiver of the right to object pursuant to such rule.

> **D.**    **Payment of Dividends Generally.**  Except as otherwise specifically provided for herein, dividends shall be paid as follows:

> 1.    Dividends shall be paid only to those creditors that were the record holders of Allowed Claims on the last business day of the month preceding the due date of the payment.

> 2.    To the extend the Trustee has insufficient funds to pay all claims in full in any given month or quarter, the Trustee shall prioritize payments (i.e., pay each Class claim then owed in full before paying anything to the next Class) in the following order of priority:  Class 1 and 2 (IRS Secured Claims and Contingent Coastal Capital, LLC Secured Claims, respectively on a pro rata basis), to the extend the Claims are Allowed Secured Claims, Class 3 (Administrative Expense Claims), Class 4 (Priority Tax Claims), Classes 6 and 9 (General Unsecured Claims and Department of Labor Claims, respectively on a pro rata basis), and Class 7 (Subordinated General Unsecured Claims).

> 3.    Dividends shall be paid by the Trustee as provided for in this Plan.

4.      Except as otherwise specified herein, all dividend payments shall be made in United States currency by checks drawn on a domestic bank selected by the Trustee as appropriate as long as it is a qualified depository or by wire transfer from such a depository.

5.      The Trustee shall pay the dividends becoming due under the Plan by mailing a check to the record holders of Allowed Claims.

6.      The Trustee may delay paying to the record holder of any Allowed Claim any dividend that is less than $50 until the dividends due the holder thereof total that amount or the last dividend payment is due under the Plan or prepay any dividends totaling less than $250 over the term of the Plan to save money.

7.      Any dividend payment due on a specific date shall be conclusively deemed to have been made on the due date if made within (a) 30 days from such date, (b) thirty (30) days from the entry of an order allowing a disputed claim in whole or in part by the Court, or (c) thirty (30) days from the date set by the Court from time to time as the last day on which the Reorganized Debtor may object to a claim in the absence of a timely objection.

8.      Except as otherwise provided for in an order, holders of Allowed Claims transferred pursuant to Bankruptcy Rule 3001 prior to a record date will be treated as the holders of such claims and membership interests for all purposes, notwithstanding that any period provided by Rule 3001 for objecting to such transfer has not expired.

9.      Notwithstanding anything to the contrary in the Plan, the Trustee  may set off, recoup, or withhold against the distributions to be made on account of any Allowed Claim, the amount of any claim that the Reorganized Debtor has against the creditor holding the Allowed Claim.

10.      Notwithstanding any other Plan provision, distributions will be made on a disputed claim only after, and only to the extent that, the disputed claim becomes an Allowed Claim or is deemed to be an Allowed Claim for distribution purposes.

11.      Distributions to creditors holding Allowed Claims will initially be made by mail as follows:

a.      Distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change received by the Trustee no later than ten (10) business days prior to the date of any distribution; or

b.      If no such address is available, distributions will be sent to the address set forth on Bankruptcy Schedules; or

c.      If no address is available either on a proof of claim or on Bankruptcy Schedules, the distribution will be deemed to be undeliverable.  If a distribution is returned to the Trustee as an undeliverable distribution or is deemed to be an undeliverable distribution, the Trustee will make no further distribution to the creditor holding the claim on which the distribution is being made unless and until the Trustee is timely notified in writing of that creditor's current address.  Subject to the following paragraph, until they become deliverable, the Trustee will create a reserve for undeliverable distributions for the benefit of the entities entitled to the distributions.

12.     Any creditor that is otherwise entitled to an undeliverable distribution and that does not, within thirty (30) days after a distribution is returned to the Trustee as undeliverable and deemed to be an undeliverable distribution as a result thereof, provide the Trustee with a written notice asserting its claim to that undeliverable distribution and setting forth a current, deliverable address will be deemed to have waived any claim to that undeliverable distribution and will be forever barred from receiving that undeliverable distribution or asserting any claim against the Reorganized Debtor or its property.  Any undeliverable distributions that are not claimed under this Section before the waiver and forfeiture date shall be distributed in accordance with the terms of this Plan, including the Trust. Nothing in this Plan requires the Trustee to attempt to locate any creditor holding an Allowed Claim and whose distribution is undeliverable.

## XII.    Implementation Generally.

### A.    Authority and Duty to Implement Plan.

1.      Subject only to the conditions precedent set forth herein, the entry of the Confirmation Order shall authorize, direct, and empower the Reorganized Debtor and Trustee to implement this Plan in accordance with its terms as confirmed by the Court.  The entry of the Confirmation Order shall automatically authorize the Reorganized Debtor and Trustee to do, or

cause to be done, close or caused to be closed, execute or cause to be executed and take or cause to be taken each and every other act, action or transaction described herein and such other acts, actions, documents and transactions, which the Reorganized Debtor and Trustee reasonably deems to be necessary or appropriate to the implementation of this Plan or incidental thereto.  To the extent that Court approval of any implementing act shall be necessary or appropriate, the entry of the Confirmation Order shall approve each such implementing act.

     2.    The entry of the Confirmation Order shall also direct and require:

     a.    The Reorganized Debtor and all creditors to accept the treatment of their claims in accordance herewith and to pay, perform and satisfy all their other Plan obligations hereunder.

     b.    The Reorganized Debtor and all creditors to do, or cause to be done, execute or cause to be executed, and take or cause to be taken such further acts, actions, modification documents and other Plan Documents as may be reasonably necessary to implement this Plan in accordance with its terms as confirmed by the Court.

## XIII.  Concluding Provisions.

    **A.**    **Post-Confirmation Modification of Plan.**  This Plan may be modified or amended by the Reorganized Debtor before or after the Confirmation Date as provided in §1127 of Bankruptcy Code.

    **B.**    **Successors in Interest.**  The Plan rights and obligations upon all Plan Parties shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

    **C.**    **Reorganized Debtor Tolling.**

     1.    The Reorganized Debtor shall have the benefit of Bankruptcy Code Section 108 with respect to any pending adversary proceeding, civil action or any other proceeding or any retained causes of action.

     2.    In addition, the Reorganized Debtor shall have the benefit of any applicable federal or state law "discovery rules" extending statutes, rules of law and equitable doctrines limiting the period of time within which causes of action may be asserted against defendants.

**D.**　　**Discharge and Other Relief.**  Except as otherwise provided in the Plan or the Confirmation Order, the Reorganized Debtor shall be discharged, pursuant to Section 1141(d)(1) of Bankruptcy Code, from all claims and debts that arose prior to the Confirmation Date, and any debt of a kind specified in section 502(g), 502 (h) or 502(l) of Bankruptcy Code, whether or not:

1.　　A proof of claim based on such debt is filed or deemed filed under Bankruptcy Code Section 502;

2.　　Such claim is Allowed under Bankruptcy Code Section 502; or

3.　　The holder of such claim has accepted the Plan.

**E.**　　**Pre-Confirmation Claims Against Reorganized Debtor Barred.**

1.　　Except as otherwise provided in this Plan, all persons and entities that held, hold or may hold claims, membership interests or other rights of any nature whatsoever against the Reorganized Debtor which arose prior to the Confirmation Date shall be permanently and forever barred and enjoined from filing any proceeding against or taking any action to enforce any such claim, equity interest or other right against the Reorganized Debtor or any property of the Bankruptcy Estate following substantial consummation, except for (a) Proceedings brought to enforce any Plan rights or obligations or (b) appeals from the Confirmation Order, if any.

2.　　Nothing contained herein shall be deemed to discharge or release any claims which any creditor has or may have against any third party.

**F.**　　**No Release of Third Parties.**  Nothing contained in this Plan shall be deemed to release or in any way affect the enforceability of any claims, causes of action, or judgments held by a creditor against third parties, except for those released hereby.

**G.**　　**Retention of Jurisdiction.**

1.　　The Court shall retain jurisdiction over this case to the extent consistent with its customary and usual practice.

2.　　The Court shall also retain jurisdiction to hear and enter orders on or resolving disputes or disagreements arising or filed prior to the entry of the Final Decree in this Case with respect to:

a.      Applications for awards of administrative expenses.

b.      Chapter 5 actions and other rights created by Bankruptcy Code, adversary Proceedings, contested matters, compromises and/or abandonments of any property of the Estate involving or pertaining to the implementation of this Plan, including those over which the Court has or would have had jurisdiction, but for final confirmation.

c.      Any pending proceedings and proceedings initiated following confirmation based on a retained cause of action.

d.      The interpretation, implementation, or enforcement of this Plan.

Respectfully submitted,

**Sky-Skan Incorporated,**
By its Counsel

DATED:  April 19, 2019      /s/ Peter N. Tamposi
Peter N. Tamposi, BNH 04931
Tamposi Law Group, P.C.
159 Main St.
Nashua, NH 03060
PH: (603) 204-5513
peter@tlgnh.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served the foregoing pleading on all persons/entities named on the CM/ECF Electronic Service List by causing it to be filed electronically via the CM/ECF filing system.

/s/ *Peter N. Tamposi*
Peter N. Tamposi